IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:14-CV-00155-D

**Lindy Sue Locklear,**

                Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of Social Security,

                Defendant.

**Memorandum & Recommendation**

Plaintiff Lindy Sue Locklear instituted this action on July 29, 2014 to challenge the denial of her application for social security income. Locklear claims that Administrative Law Judge Mason Hogan erred in failing to find her hypertension and depression were severe impairments, in weighing the medical evidence, in assessing Locklear's credibility and in posing hypothetical questions to the Vocational Expert ("VE").[1] Both Locklear and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 28, 33.

After reviewing the parties' arguments, the court has determined that ALJ Hogan reached the appropriate decision. There is substantial evidence to support ALJ Hogan's findings that Locklear's hypertension and depression failed to present more than a minimal effect on her ability to perform work-related activity. ALJ Hogan also properly weighed the medical opinion evidence and assessed Locklear's credibility in accordance with the Social Security Regulations.

---

[1] Locklear's brief in support of her motion for judgment on the pleadings contains a plethora of spelling, grammatical, and syntax errors. Counsel is notified that future submissions demonstrating a similar lack of attention or review may be stricken.

Finally, the hypothetical questions accurately reflected all of Locklear's established limitations. Therefore the undersigned magistrate judge recommends[2] that Locklear's Motion for Judgment on the Pleadings be denied, that Colvin's Motion for Judgment on the Pleadings be granted, and that the Commissioner's final decision be affirmed.

**I.     Background**

On May 16, 2011, Locklear filed applications for supplemental security income and disability insurance benefits on the basis of a disability that allegedly began on May 14, 2011. After her claims were denied at both the initial stage and upon reconsideration, Locklear appeared before ALJ Hogan for a hearing to determine whether she was entitled to benefits. After the hearing, ALJ Hogan determined that Locklear was not entitled to benefits because she was not disabled. Tr. at 12–24.

In his decision, ALJ Hogan found that Locklear had the following severe impairments: status post compound tibia and fibula fracture,[3] asthma, and obesity. *Id*. at 14. ALJ Hogan also found that her impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* at 15. ALJ Hogan determined that Locklear had the Residual Functional Capacity ("RFC") to perform light work with the following limitations: limited to occasional pushing and pulling with right lower extremity; no climbing of ladders, scaffolds, or ropes; occasional climbing of ramps and stairs; only occasional balancing, stooping, kneeling, crouching, and crawling; should avoid concentrated exposure to vibration, fumes, odors, dust, gases, poor ventilation, and to hazards such as unprotected heights and dangerous machinery. *Id.* at 16. ALJ Hogan also concluded that

---

[2] The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation. 28 U.S.C. § 636(b).
[3] Locklear was involved in an accident on May 15, 2011 when she and her boyfriend, who were riding an four-wheeler, were struck by a pick-up truck. Tr. at 14.

Locklear was unable to perform any past work but that, considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she was capable of performing. *Id.* at 22–24. These jobs included: receptionist, call out operator, charge account clerk, and food checker. *Id.* at 23–24. Thus, ALJ Hogan found that Locklear was not disabled. *Id.* at 24. After unsuccessfully seeking review by the Appeals Council, Locklear commenced this action and filed a complaint pursuant to 42 U.S.C. § 405(g) on July 29, 2014. D.E. 10.

**II.     Analysis**

    **A.     Standard for Review of the Acting Commissioner's Final Decision**

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

    **B.     Standard for Evaluating Disability**

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments

3

significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment then, at step four, the claimant's RFC is assessed to determine whether plaintiff can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C. Impairment severity

Locklear first contends that ALJ Hogan erred in finding that her hypertension and depression were not severe impairments.[4] She maintains that state agency physician Dr. Robert Gardner, who reviewed Locklear's records, found that her hypertension was a severe impairment. Tr. at 93. She maintains that ALJ Hogan erred in giving this opinion only moderate weight. *Id.* at 22. The Commissioner submits that these conditions fail to qualify as severe impairments because they have a minimal effect of her ability to perform work-activity.

In evaluating these conditions, ALJ Hogan noted that, although Locklear had a history of high blood pressure, the record failed to disclose that she had reported any residual symptoms for a continuous 12 month period since the alleged onset date. *Id.* at 15. While the medical record noted that Locklear mentioned depressive symptoms on occasion, ALJ Hogan observed that the

---

[4] Locklear also contends that the ALJ erred by failing to find that her asthma was not a severe impairment. D.E. 28-1 at 18. However, the ALJ's decision clearly found that her asthma was a severe impairment. Tr. at 14.

4

record did not show that she received a mental health diagnosis, that she was prescribed medication or that she was referred for mental health treatment. *Id.* Accordingly, ALJ Hogan determined that her hypertension and depression were not severe impairments because they presented no more than a minimal effect on her ability to work. *Id.*

In addressing impairment severity, Locklear fails to demonstrate how her hypertension and depression significantly limit her ability to perform basic work activities and instead relies solely on the assessment of Dr. Gardner, a non-examining consultant. Despite Dr. Gardner's assessment of her hypertension, another Disability Determination Services consultant, Dr. Edmund Molis, found that Locklear's hypertension was not a severe impairment. *Id.* at 111. Both Drs. Gardner and Molis also determined that Locklear could perform light work, with restrictions. *Id.* at 102, 112–13. In evaluating these opinions, ALJ Hogan concluded that medical evidence supported additional non-exertional limitations than found by Drs. Gardner and Molis, and thus assigned these opinions only moderate weight. *Id.* at 22.

As noted above, the plaintiff bears the burden of showing severity at the second step of the sequential evaluation process. *See Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir. 1992). ("Through the fourth step, the burden of production and proof is on the claimant."). Additionally, a plaintiff must support any showing of severity with relevant medical evidence:

> [T]he claimant must show more than the mere presence of a condition or ailment. If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity. . . . The determination at step two is based on medical factors alone. A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled. The evidence that a claimant has an impairment must come from acceptable medical sources including licensed physicians or psychologists. A claimant's statements regarding the severity of an impairment is [sic] not sufficient.

*Rivas v. Barnhart*, No. 05–1266 MLB, 2006 WL 4046153, at *4 (D. Kan. Aug. 16, 2006) (unpublished) (citations omitted).

Aside from the finding of Dr. Gardner, a non-examining consultant, Locklear has failed to identify any evidence supporting a finding that these conditions had more than a minimal effect on her ability to engage in work activity. While Dr. Gardner opined that her hypertension was a severe impairment, he also determined that she could work at the light exertional level. Further, Dr. Gardner's conclusion that her hypertension was a severe impairment was contradicted by Dr. Molis. Moreover, there is no evidence in the record supporting a conclusion that Locklear has been diagnosed with depression, or that this condition had more than a minimal impact on her ability to perform basic work activities.

Additionally, even if ALJ Hogan erred in not finding Locklear's hypertension and depression to be severe impairments, any such error was harmless. The failure to find an alleged impairment severe at step two of the sequential analysis is not reversible error where the ALJ considers the alleged impairment at subsequent steps of the analysis. *See, e.g., Winston v. Astrue,* No. 4:11–CV–107–D, 2012 WL 4086448 *4 (E.D.N.C. Sept. 17, 2012) (noting that "[a]n ALJ's erroneous failure to find an impairment . . . severe at step two of the sequential analysis is harmless error if other impairments are found to be severe and the omitted impairment is considered at subsequent steps."); *Atkinson v. Astrue*, No. 5:10–CV–298–FL, 2011 WL 3664346, at *8 (July 20, 2011) (citing *Jones v. Astrue*, No. 5:07–CV–452–FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009)), *adopted,* 2011 WL 3664858 (E.D.N.C. Aug. 18, 2011). For these reasons, Locklear has failed to establish that her depression and hypertension were severe impairments.

## D. Weight of medical opinions

Locklear also argues that ALJ Hogan erred in considering the opinions of her treating providers. She maintains that ALJ Hogan erred in determining her RFC because he failed to properly weigh the findings and opinions of Dr. Scott McGinley, with whom she treated from 2009 to 2013. The Commissioner asserts that ALJ Hogan properly considered this medical evidence. The court concludes that the ALJ justifiably accorded little weight to Dr. McGinley's opinion and properly considered the medical evidence.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). When evaluating medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654. An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up "specious inconsistencies," *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, see 20 C.F.R. § 404.1527(d) (1998).

According to 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2), a treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record. Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1994) (finding that "if a physician's opinion in

not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight"). A medical expert's opinion as to whether one is disabled is not dispositive; opinions as to disability are reserved for the ALJ and for the ALJ alone. *See* 20 C.F.R. § 404.1527(e)(1) (1998). Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given. *See* 20 C.F.R. § 404.1527(d)(3) (1998). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. *See* 20 C.F.R. § 404.1527(d)(4) (1998).

Locklear submits that Dr. McGinley diagnosed her with hypertension and asthma. Following her accident, she was seen on June 8, 2011. Dr. McGinley noted her right leg was weak and advised her to keep the leg elevated. Tr. at 416. In October 2011, Dr. McGinley opined that Locklear should not work for three to six months. *Id.* at 386. ALJ Hogan gave this opinion little weight because Dr. McGinley did not explain this finding and because it was inconsistent with treatment notes reflecting that Locklear's condition had improved to being fully weight-bearing. *Id.* at 21. While noting that Locklear was somewhat functionally limited for a short time following her May 15, 2011 accident, ALJ Hogan observed that her functional abilities largely increased within six months of the accident. *Id.* at 21–22. Thus, there is a reasonable basis for ALJ Hogan to afford Dr. McGinley's opinion less that controlling weight. Consequently, Locklear has failed to state a claim on this issue.

**E.    Credibility**

Locklear next maintains that ALJ Hogan's determination that she was less than credible is not supported by substantial evidence. ALJ Hogan noted that while her medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements as to

8

the intensity, pace and limiting effects of those symptoms were not fully credible. *Id.* at 18. The Commissioner argues that ALJ Hogan properly assessed Locklear's credibility. The court agrees that the ALJ's determination regarding Locklear's credibility was supported by substantial evidence.

An ALJ's assessment of a claimant's credibility involves a two-step process. *Craig*, 76 F.3d at 593–96; 20 C.F.R. § 404.1529(a)-(c); SSR 96–7p, 1996 WL 374186, at *1 n.1; 2 (July 2, 1996). First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. S.S.R. 96–7p, 1996 WL 374186, at *2. Next, the ALJ must evaluate the extent to which the claimant's statements concerning the intensity, persistence, or functionally limiting effects of the symptoms are consistent with the objective medical evidence and the other evidence of record. *See id.*; *see also* 20 C.F.R. § 404.1529(c)(3) (setting out factors in addition to objective medical evidence in evaluation of a claimant's pain and other symptoms). If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence." S.S.R. 96–7p, 1996 WL 374186, at *2, 4; *Jonson v. Colvin*, No. 12-cv-1742, 2013 WL 1314781, at *7 (W.D. Pa. Mar. 28, 2013) ("If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006).

ALJ Hogan noted that Locklear was laid off from work for several months before her accident and thus she did not stop working due to her impairments. *Id.* at 18. Observing further that she had a poor work history, ALJ Hogan suggested that a question existed as to whether Locklear's continuing unemployment was due to medical impairments. *Id.* at 18–19. He further stated that while she had suffered a bad fracture as a result of the accident, Locklear's condition

9

had improved. *Id.* She was fully weight-bearing a few months later, took over-the counter medication for pain and that, after October 2011, she had not sought any further treatment for over one year. *Id.* at 19–20. ALJ Hogan further found that Locklear's credibility was called into doubt by Locklear's statement to a medical provider that "she may be able to go back to work but that she had filed for disability." *Id.* at 21. Additionally, he noted that Locklear's testimony was inconsistent when, for example, she testified that she could not walk long distances or for long periods of time, *id.* at 61–62, but that she also stated that she walked 45 minutes to one hour, *id.* at 77. Coupled with a wide variety of activities, including cooking, cleaning, making the bed, and vacuuming which contradicted her allegations of limiting pain, ALJ Hogan determined that Locklear was not fully credible. *Id.* at 21.

In sum, these facts provide substantial evidence for ALJ Hogan to conclude that Locklear was not fully credible and that her allegations as to the disabling effects of her impairments could not be fully credited. As credibility determinations must be given great deference, *see Johnson v. Barnhart*, 434 F.3d at 653 (holding that a reviewing court should not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ), and there is substantial evidence to support ALJ Hogan's determination, Locklear's argument on this issue should be rejected.

### F.    Hypothetical questions

Finally, Locklear maintains that the hypothetical questions posed to the VE were inaccurate. Specifically, Locklear contends that the medical evidence establishes that she was being treated for hypertension and that she could not be exposed to extreme heat or cold for long hours. She argues that the ALJ erred in failing to include these limitations in the RFC and in the hypothetical questions to the VE. She also submits that her RFC should have included Dr.

McGinley's directive that she elevate her leg daily. When questioned about this limitation, the VE stated that it would preclude competitive work. Tr. at 86. The Commissioner maintains that the hypothetical questions reflected all of Locklear's well-established limitations. The court determines that ALJ Hogan did not err by omitting several limitations from the hypothetical questions posed to the VE.

"Hypothetical questions posed to a VE must include all of a claimant's impairments that are supported by the record for the VE's answer to be considered substantial evidence." *Drogus v. Colvin*, No. 12–643, 2013 WL 1654809, at *4 (W.D. Pa. Apr. 16, 2013) (citing *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004)); *see also Cuevas v. Astrue*, No. 12–4644, 2013 WL 1932933, at *5 (D.N.J. May 8, 2013) ("The ALJ's hypothetical must reflect all of the claimant's impairments that are supported by the record."); *accord Johnson v. Barnhart*, 434 F.3d at 659 (holding that a hypothetical question is proper if it adequately reflects a claimant's RFC for which the ALJ had sufficient evidence); *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (holding that to be helpful, the VE's opinion must be "in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments").

On June 17, 2010, Denene Smith, a family nurse practitioner with Trinity Urgent Care and Family Practice, issued a letter stating that Locklear was unable to be exposed to extreme heat or cold for long hours because it may cause adverse side effects with her hypertension medication. Tr. at 408. This opinion predated Locklear's alleged onset date of May 15, 2011. Further, both state agency consultants concluded that in areas of environmental limitations, including exposure to extreme heat and extreme cold, Locklear had no limitations. *Id.* at 95, 102, 113. This provides substantial evidence for ALJ Hogan to conclude that Locklear was not limited in her ability to maintain exposure to extreme temperatures and, therefore, he was not required to

11

include such a limitation in either the RFC determination or in the hypothetical questions to the VE.

Finally, with respect to Dr. McGinley's limitation that Locklear elevate her leg daily, as noted above, ALJ Hogan gave Dr. McGinley's opinions little weight. *Id.* at 21. Having discounted his opinions, this limitation did not need to be included in either the RFC or the hypothetical questions to the VE. Dr. McGinley's suggestion that Locklear should elevate her leg was taken from a June 8, 2011 treatment note, less than one month since the time of her accident. *Id.* at 416. As noted by ALJ Hogan, the medical evidence of record showed that Locklear's condition continued to improve in the months following her accident. *Id.* at 19–20. Moreover, at her last appointment, Dr. McGinley noted that Locklear was ambulatory, could bear full weight on her leg, and prescribed her exercises to perform. *Id.* at 386. Accordingly, his direction that she elevate her leg does not appear to be a continuing or permanent limitation.

For these reasons, ALJ Hogan did not err in omitting these additional limitations from the hypothetical questions at step five.

### III.  Conclusion

For the forgoing reasons, the court recommends that Locklear's Motion for Judgment on the Pleadings (D.E. 28) be denied, that Colvin's Motion for Judgment on the Pleadings (D.E. 33) be granted, and that the Commissioner's final decision be affirmed.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel.  Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation.  The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the

Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Dated: August 10, 2015.

                    */s/ Robert T. Numbers II*
                    ROBERT T. NUMBERS, II
                    UNITED STATES MAGISTRATE JUDGE